IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

**ANGELA DAWN HUTSON,**

    **Plaintiff,**

v.                                    **CASE NO. 6:12-cv-00678**

**MICHAEL J. ASTRUE[1],**
**Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Brief in Support of Judgment on the Pleadings (ECF No. 10) and a Brief in Support of the Defendant's Decision (ECF No. 11).

Plaintiff, Angela Dawn Hutson, filed applications on March 7, 2007. In both applications, Complainant alleged disability beginning April 19, 2006. The claims were denied initially and upon reconsideration (Tr. at 87). Claimant filed a written request for hearing on November 1, 2007. A hearing was held on November 3, 2009. Claimant attended a video hearing in

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

1

Parkersburg, West Virginia. Administrative Law Judge Theodore Burock left the record open for 45 days to allow Claimant to produce additional medical record (Tr. at 50). A supplemental hearing was held on April 22, 2010. In the Decision dated June 25, 2010, the Administrative Law Judge (ALJ) determined that Claimant was not entitled to benefits (Tr. at 17-30).

On August 9, 2010, Claimant requested a Review by the Appeals Council (Tr. at 12). On November 13, 2010, the Appeals Council notified Claimant via letter that new and material evidence to the issues considered in the hearing decision dated June 25, 2010, could be mailed to the Appeals Council within 25 days (Tr. at 7). On December 10, 2010, Claimant submitted a Summary of Arguments (Tr. at 274). Claimant's submission was made part of the record by Appeals Council (Tr. at 1-2). Notice of Appeals Council Action dated January 18, 2012, notified Claimant that her request for review was denied because the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). On March 11, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF No. 2).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id*. §§ 404.1520(a), 416.920(a). The first

inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id*. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id*. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id*. § 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id*.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id*. § 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2012).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 19).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, thyroid impairment, cervical and thoracic impairment, depression, anxiety and borderline intellectual functioning (Tr. at 20).  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1

(Tr. at 21). The ALJ then found that Claimant has a residual functional capacity ("RFC") for light work, reduced by nonexertional limitations[2] (Tr. at 23). As a result, Claimant cannot return to her past relevant work (Tr. at 28). Nevertheless, the ALJ concluded that Claimant could perform jobs such as price marker, hand packer and stock checker (Tr. at 29). On this basis, benefits were denied (Tr. at 29-30).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

---

[2] Claimant is limited to routine, repetitive tasks involving 2 to 3 step processes, in a low stress work environment. She cannot climb ladders, ropes or scaffolds. She may occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She must avoid exposure to hazards, such as unprotected heights or dangerous equipment and concentrated exposure to extreme temperature (Tr. at 23).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 20, 1978 (Tr. at 35). Claimant graduated high school and received six months of additional nursing training (Tr. at 65). She previously worked as a certified nursing assistant and patient care technician (Tr. at 203). Claimant stopped working on April 19, 2006, when she went on maternity leave (Tr. at 202). She is the primary care taker for her four year old and six year old children (Tr. at 72).

The Medical Record

In 2006, Claimant was diagnosed with Graves' disease and hypothyroidism (Tr. at 374-375). On May 2, 2007[3], Claimant was examined by Psychologist Melodye Jill Hornish per the request of Disability Determination Services (DDS) to assist with determining eligibility for benefits (Tr. at 281). Ms. Hornish's Consultative Evaluation Report stated that Claimant was approximately 5 feet, 2 inches and weighed at 190 pounds. (*Id.*)

Claimant possesses a driver's license and drover herself to the appointment by following her father who led the way to Ms. Hornish's office. (*Id.*) The chief complaint noted on the evaluation report was that Claimant is applying for benefits because of a learning disability. Claimant reported the onset date to be "way back in school" (Tr. at 281). Claimant reported "I can't really read big words and comprehend a lot of things" (Tr. at 282).

---

[3] Over a year after Claimant stopped working.

Claimant reported that she has not received any mental health treatment (*Id.*) She claims that she has been irritable and that she was prescribed an antidepressant medication after she delivered her daughter but that she did not take it because she didn't have insurance. (*Id.*) She smokes 1 and 1/2 packs of cigarettes daily.

Claimant was retained in first grade and had to repeat the grade. Claimant graduated high school. She was in a speech class throughout her school years. Her school attendance was regular. Claimant worked as a certified nursing assistant for 8 to 9 years. She was never terminated from a job. (*Id.*) Claimant reported that she goes grocery shopping, cleans, enjoys attending yard sales and visits family members (Tr. at 284).

On May 2, 2007, Claimant took an intellectual assessment as part of the consultative evaluation report. Claimant's IQ score results were a verbal IQ of 65, a performance IQ of 65, and a full scale IQ of 62 (Tr. at 283). Ms. Hornish's diagnosis was that Claimant has Depressive Disorder and Borderline Intellectual Functioning (Tr. at 285).

On August 23, 2007, Stephen Nutter, M.D. performed an Internal Medicine Examination of Claimant for the West Virginia Disability Determination Division (Tr. at 317). The examination stated Claimant's chief complaint was "claiming disability due to back and neck pain and joint pain." She complained of experiencing back pain for the past 7 to 8 years. She had a body mass index of 35. Claimant reported tenderness of the cervical spine (Tr. at 317-319). Dr. Nutter's impression found chronic cervical, thoracic and lumbar strain and degenerative arthritis (Tr. at 320). Claimant did not report a learning disability or mental disability during Dr. Nutter's August 23, 2007, Internal Medical Examination (Tr. at 317-320).

On September 18, 2007, state agency consultant James W. Bartee, Ph.D. noted that Claimant's IQ scores were inconsistent with the functional capacities in the record. Dr. Bartee stated "I suspect that the IQ scores reflect some sort of validity problem" (Tr. at 333).

Claimant was seen by Psychiatrist Cindy Dugan, M.D. on February 27, 2008 (Tr. at 362). Dr. Dugan's mental status examination found that Claimant's mood was fair, she was talkative, she was not having hallucinations, delusions or paranoid and no plans of harming herself or others. (*Id.*) Claimant's memory, concentration and attention were average. Dr. Dugan found that Claimant's "IQ and fund of knowledge is average." (*Id.*) Claimant's judgment was found to be good. Dr. Dugan's assessment states "Patient does not feel she can work. Has applied for Social Security but denies any additional complaints mentally." (*Id.*)

On May 6, 2009, Claimant saw Psychiatrist Liza Schafner, M.D. at Westbrook Health Services (Tr. at 387). Dr. Schaffner's mental exam stated Claimant seemed preoccupied, wasn't suicidal or psychotic and that her insight and judgment was fairly good. Dr. Schaffner's impression found mood disorder NOS, Graves' Disease, Bipolar Disorder, Anxiety Disorder, Panic Attacks and Post Traumatic Stress Disorder (PTSD). (*Id.*)

On October 20, 2009, Dr Lily Jacob conducted a mental assessment of ability to do work-related activities (Tr. at 395). An individual's ability to perform an activity is rates by terms of none, slight, moderate, marked or extreme. None to Moderate finds the individual able to function satisfactorily. A marked rating finds there is a serious limitation in this area and the individual's ability to function is severely limited but not precluded. (*Id.*) Claimant's mental assessment found her ability to be marked when interacting with supervisors and dealing with work stress (Tr. at 396). Claimant's ability to understand, remember and carry out complex job

instructions was rated as marked. (*Id.*) Additionally, her ability to complete a normal work day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was rated as marked (Tr. at 397). The ALJ gave "no weight" to Dr. Jacob's opinion as it is based on Claimant's self-reported severe complaints and is inconsistent with the record as a whole (Tr. at 27).

On December 1, 2009, Claimant attended an office visit with Dr. Jacob. The doctor's diagnostic impression consisted of Major Depressive Disorder, Mood Disorder, PTSD, Obesity, Hyperthyroidism and Chronic Muscle Pains (Tr. at 389). On October 13, 2009, Kathryn Worthington, M.D. began treating Claimant. Dr. Worthington found Claimant to be suffering from Major Depressive Episode, Generalized Anxiety Disorder and PTSD (Tr. at 400). Dr. Worrthington notes that Claimant reported sleeping better and feeling "somewhat better with more energy and the like." (*Id.*)

On March 4, 2010, Dr. Worthington conducted a mental assessment of ability to do work-related activities (Tr. at 403). An individual's ability to perform an activity is rates by terms of none, slight, moderate, marked or extreme. None to Moderate finds the individual able to function satisfactorily. A marked rating finds there is a serious limitation in this area and the individual's ability to function is severely limited but not precluded. (*Id*.) Claimant's abilities to make occupational adjustments, perform adjustments and make personal social adjustments all received ratings of none, slight or moderate (Tr. at 403-405). The ALJ gave "no weight" to Dr. Worthington's opinion as it was based on Claimant's self-reported severe complaints and is inconsistent with the record as a whole (Tr. at 28).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in finding that the Claimant did not meet the requirements of Listing 12.05(c) when the ALJ did not infer "that her mental retardation began prior to age 22" (ECF No. 10) and the ALJ failed to comply with 20 C.F.R. § 404.1257 by failing to accord adequate weight to the opinions of the Claimant's treating psychologist.

The Commissioner argues that substantial evidence supports the ALJ's finding that Claimant has the residual functional capacity (RFC) to perform simple routine work in a low stress environment (ECF No. 11). The Commissioner asserts that none of Claimant's doctors or psychologists noted any IQ or learning problems or limitations other than the one IQ test she was administered after she filed for disability claiming mental retardation as her disabling medical condition. The Commissioner asserts that Claimant did not meet her burden of proving that her impairment meets or equals the requirements of listing 12.05(c) and that Claimant failed to demonstrate that she is unable to engage in any substantial gainful work.

The ALJ's hearings were conducted on November 3, 2009, and April 22, 2010. The medical background referenced above was presented through testimony or documentation. In addition, Dr. Judith Brendemuehl, testified at the April 22, 2010, hearing as an impartial medical expert. Dr. Brendemuehl testified that there are no x-rays or MRIs to support Dr. Nutter's diagnosis of degenerative arthritis. Dr. Brendemuehl testified that the claimant can perform light work except she cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and she must avoid exposure to hazards, and concentrated exposure to extreme temperature (Tr. at 62). The ALJ noted that Claimant's

extreme complaints, symptoms and limitations are not supported in view of the record. Based on the lack of record supporting Claimant's complaints, symptoms and limitations along with Dr. Brendemuehl's testimony that claimant can perform light the ALJ found Claimant not credible. The ALJ stated that the lack of Claimant's credibility to her physical allegations "raises serious questions as to her alleged psychiatric complaints as well" (Tr. at 26). The ALJ gave significant weight to Dr. Brendemuehl as she had an opportunity to review the entire record and her opinion was consistent with Claimant's RFC and the record as a whole (Tr. at 28).

The ALJ found that there was evidence that Claimant stopped working for reasons not related to the allegedly disabling impairments (Tr. at 27). Claimant stopped working on April 19, 2006, due to maternity leave (Tr. at 202). Claimant's IQ test was administered after she stopped working. Although the claimant alleged a disability onset date of April 19, 2006, the first medical record of evidence is dated May 2, 2007, over a year later (Tr. at 24). The record contains no counseling records and no evidence of psychiatric hospitalization (Tr. at 25).

A vocational expert (VE) testified at the administrative hearing (Tr. at 63). William Tanzie, VE, testified that a hypothetical individual given Claimant's past work, her age, education and RFC would be able to perform work as a price marker, hand packer and stock checker (Tr. at 66-67). Pursuant to SSR 00-4[4], the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In

---

[4] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012).

Relying on Claimant's work experience, education, certification as a nurse's assistant, lack of mental health history and treatment, RFC, daily functioning activities, medical

professionals' testimonies and the testimony of the vocational expert, the ALJ's determination that Claimant did not satisfy the findings required to demonstrate mental retardation under Listing 12.05(c) is supported by substantial evidence.

Listing 12.05 addresses mental disabilities including mental retardation. Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. 20 C.F.R. 404 Subpart P, Appendix 1, Listing § 12.05. In order to satisfy the listing requirements for mental retardation, Claimant must meet the Listing description and one of the following four prongs:

(a) Mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions, such that the use of standardized measures of intellectual functioning included, OR

(b) A valid verbal, performance, or full scale IQ of 59 or less, OR

(c) A valid verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work related limitation of function, OR

(d) A valid verbal, performance or full scale IQ of 60-70 resulting in at least one of the following: (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in maintaining concentration, persistence, or pace; OR (4) Repeated episodes of decompensation, each of extended duration.

Claimant argues the ALJ erred by failing to "infer" that Claimant's mental retardation began prior to age 22 when evaluating whether Claimant met the requirements for Listing

12.05(c) (ECF No. 10). As cited above, under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See, Blalock*. Claimant did not meet her burden of proving her alleged mental retardation began prior to age 22. Claimant failed to demonstrate she satisfies any part of the introductory requirement of Listing 12.05(c). Consequently, it is unnecessary to analyze whether Claimant met the second step of also proving that she meets one of the four prongs to satisfy Listing requirements for 12.05(c).

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings, and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155

(1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

    The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 20, 2013

_____
Dwane L. Tinsley
United States Magistrate Judge