IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

ANGELA DAWN HUTSON,

          Plaintiff,

v.                                       CIVIL ACTION NO.  6:12-cv-00678

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

      Before the Court is Plaintiff Angela D. Hutson's Complaint seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") [ECF 2].  By Standing Order entered September 2, 2010 and filed in this case on March 12, 2012, this action was referred to former United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation ("PF&R").  On April 8, 2013, this action, following Magistrate Judge Stanley's retirement, was referred to United States Magistrate Judge Dwane L. Tinsley.  Magistrate Judge Tinsley filed his PF&R [ECF 13] on August 20, 2013, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket.

      Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made.  The Court is not required to review, under a de novo or any other standard, the

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order.  28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F .2d 91, 94 (4th Cir. 1984).  In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Plaintiff filed a timely objection to the PF&R on September 5, 2013.  For the reasons that follow, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's objection, **ADOPTS** the PF&R to the extent it is consistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** Plaintiff's Complaint.

## I. PROCEDURAL BACKGROUND

The facts concerning this matter are accurately and more fully set forth in the PF&R.  In short, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on March 7, 2007, alleging disability beginning April 19, 2006 due in part to a learning disability.  Her applications were denied initially and upon reconsideration.

At Plaintiff's request, a hearing was held before Administrative Law Judge Theodore Burock ("ALJ") on November 3, 2009.  The ALJ received medical record evidence, and both Plaintiff and a vocational expert offered testimony.  The ALJ held a second hearing on April 22, 2010 after allowing Plaintiff the opportunity to produce additional medical evidence.  Plaintiff again testified, as did a medical expert and a vocational expert.

By decision dated June 25, 2010, the ALJ determined that Plaintiff was not entitled to benefits. Using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520, the ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of April 19, 2006; (2) Plaintiff's obesity, thyroid impairment, cervical and thoracic impairment, depression, and borderline intellectual functioning all qualify as severe impairments; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments under the governing regulations; (4) Plaintiff has the residual functional capacity ("RFC") to perform light work, with certain limitations, preventing the performance of past relevant work; and (5) Plaintiff could nonetheless perform jobs such as a price marker, hand packer, and stock checker. (ECF 9-2 at 19-30.)

Plaintiff's request for review of the ALJ's decision was denied by the Social Security Administration's Appeals Council and, thus, the ALJ's decision became the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff sought judicial review by this Court on March 11, 2012. Following briefing by the parties, the Magistrate Judge filed a PF&R recommending that this Court affirm the Commissioner's final decision.

## II.     PLAINTIFF'S OBJECTION

The ALJ found at step three of the sequential evaluation process that Plaintiff does not have an impairment that meets or equals the requirements for the intellectual disability listing found at section 12.05(C). He reached this conclusion by rejecting Plaintiff's documented IQ scores as invalid. The Magistrate Judge proposed that this Court affirm the ALJ's decision because the evidence of Plaintiff's functional abilities—including her prior work history and residual functional capacity—conflicts with her test results. Plaintiff objects to the Magistrate Judge's reasoning, claiming that he improperly relies on evidence relevant only to support a

3

finding of non-disability at step five of the evaluation process to support the ALJ's finding of non-disability at step three.

### III. STANDARD OF REVIEW

The Court has a narrow role in reviewing claims brought under the Social Security Act. This Court is authorized to review the Commissioner's denial of benefits, as set forth by his designee, the ALJ, under 42 U.S.C. §§ 405(g) and 1383(c)(3). Its review is limited to determining whether the contested factual findings of the Commissioner are supported by substantial evidence and were reached through application of correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

If substantial evidence exists, the Commissioner's final decision must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays*, 907 F.2d at 1456). A review of the Commissioner's decision must be made on the record as a whole. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Assuming error by the Commissioner, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached by the ALJ. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190

n. 8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.").

## IV. DISCUSSION

The central issue for resolution is whether substantial evidence supports the ALJ's decision that Plaintiff's cognitive functioning did not meet or equal one of the listed impairments for mental retardation located at section 12.05(C).

At step three of the sequential evaluation process, the Commissioner determines whether a claimant's impairments meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520. Such impairments are presumptively disabling as they are "consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. The ALJ makes this determination by identifying the relevant listed impairments and comparing the listing criteria with the evidence of the claimant's symptoms. 20 C.F.R. § 404.1529.

Listing 12.05 addresses mental retardation. The listing begins with an introductory paragraph setting forth the diagnostic description for intellectual disability. The diagnostic description is followed by four sets of criteria, identified as subparagraphs A through D, used to evaluate the severity of the claimant's impairment. To meet the requirements for mental retardation, the claimant must first satisfy the diagnostic description, which requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, §

12.05.  Upon making this showing, the claimant must put forward evidence satisfying any one of the four sets of severity criteria.  *Id.*

At issue here is Listing 12.05(C), which requires a claimant to demonstrate "A valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2") and "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3").  *Id.*   Because IQ scores presumptively remain constant throughout a person's lifetime, the claimant need not provide an IQ score obtained prior to the age of 22 to satisfy the mental retardation listing.  *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001); *see Luckey v. U.S. Dep't of Health and Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (reasoning that absent evidence of a change in the claimant's intellectual functioning, courts can assume that a claimant's IQ has remained stable since the developmental years).  A claimant satisfies Prong 3 of the listing by demonstrating that she suffers from a severe impairment other than mental retardation.  *Luckey*, 890 F.2d at 669.

It is beyond dispute that Plaintiff satisfies Prong 3 of section 12.05(C).  (ECF 9-2 at 20 (describing Plaintiff's severe impairments)).  At issue is her ability to meet Prong 2.  During testing performed May 2, 2007, Plaintiff achieved a verbal IQ score of 65, a performance IQ score of 65, and a full-scale IQ score of 62.  (ECF 9-9 at 283.)  These scores, if valid, establish Prong 2.  The ALJ rejected the scores as unreliable, reasoning as follows:

> The undersigned finds the claimant's IQ scores are not valid as they are inconsistent with her education and work history.  Specifically, while the Wechsler Adult Intelligence Scale test (WAIS-III) administered in 2007 showed a full scale IQ of 62, the record revealed that the claimant completed the 12th grade in regular education classes and was proficient on state mandated comprehension tests (Exhibit 13E).  Additionally, the vocational expert testified that the claimant has past relevant work as [a] certified nursing assistant (CNA), which was a skilled job with an SVP of 5.

(ECF 9-2 at 22.) On this basis, the ALJ concluded that Plaintiff did not meet the requirements of section 12.05(C).[1] The Magistrate Judge recommended that this Court affirm the ALJ's decision because Plaintiff's "work experience, education, certification as a nurse's assistant, lack of mental health history and treatment, RFC, daily functioning activities, medical professionals' testimonies[,] and the testimony of the vocational expert" were all inconsistent with mental retardation. (ECF 13 at 11-12.) Plaintiff argues that the Magistrate Judge erred in relying on this evidence as a basis for his recommendation. She claims that this evidence is relevant only for the purpose of making a finding at step five of the sequential process and is unrelated to whether she satisfies section 12.05(C)'s requirements.

To a limited extent, Plaintiff is correct. Plaintiff's RFC—that is, her capacity to work despite her limitations—has no bearing on whether her impairment meets or equals the mental retardation listing. In fact, the Commissioner assesses a claimant's RFC only *after* completing the analysis at step three of the sequential evaluation process. 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."). By demonstrating an impairment that satisfies one of the disability listings, a claimant is presumptively disabled and benefits are due notwithstanding the claimant's ability to perform her past work or some alternative employment. *Sullivan*, 493 U.S. at 535 (citing *Heckler v. Campbell*, 461 U.S. 458, 460 (1983)); *see Luckey*, 890 F.2d at 669 (holding that the

---

[1] "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Because Plaintiff failed to provide a valid IQ score within the requisite range (Prong 2), the ALJ did not make a finding as to whether Plaintiff satisfied Prong 1 of section 12.05(C). Doing so certainly would have produced a better record and would have provided an alternative basis for this Court to affirm the Commissioner's decision in the event it did not accept the ALJ's analysis as it relates to Prong 2. In any event, because the Court ultimately finds that substantial evidence supports the ALJ's decision, no harm results in this case from his failure to address Prong 1.

Commissioner "may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met."). The Magistrate Judge therefore erred in relying on Plaintiff's RFC as a basis for affirming the ALJ's analysis at step three of the decisional process.[2]

All this is not to say, however, that an ALJ must accept a questionable IQ score that is inconsistent with other substantial evidence of record. It is well settled that an ALJ may reject an IQ score that conflicts with professional opinion or other evidence suggesting the claimant's functional abilities do not comport with an individual of below-average intelligence. *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (citing cases); *Muse v. Sullivan*, 925 F.2d 785, 789-90 (5th Cir. 1991) (per curiam) (IQ scores inconsistent with claimant's education and work experience). The regulations themselves provide that in addition to medical evidence, the ALJ should consider information concerning the claimant's ability to function during any prior work attempts in evaluating an alleged intellectual impairment. 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, § 12.00(D)(3).

*Hancock* explicitly forecloses Plaintiff's argument that the ALJ was precluded from considering her employment history in evaluating the accuracy of her IQ score. 667 F.3d at 474-75. Though the *Hancock* claimant had been assigned a full scale IQ score of 63 by the consultative examiner, the ALJ gave the score little weight and concluded that she did not meet the listing criteria under section 12.05(C). The ALJ based his decision on the failure of the IQ test examiner to attest to the validity of the IQ score, evidence of the claimant's actual adaptive

---

[2] The Court would note that it finds no error in the Magistrate Judge's similar reliance on the vocational expert's testimony. Although a vocational expert's testimony is typically used at step five to provide evidence of a claimant's ability to find suitable employment in the national economy despite his or her limitations, the ALJ referenced the vocational expert's testimony in his step three analysis only as proof that Plaintiff's past work as a CNA conflicted with her reported IQ scores.

functioning, and notes from her treating psychiatrist. Evidence in the record revealed that the claimant had worked as a battery assembler and a drop clipper, provided childcare for her three grandchildren, attended school to obtain her GED, and performed the majority of her household's chores. *Id.* at 475-76. The Fourth Circuit joined several of its sister circuits in holding that "an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Id.* at 474. In part by agreeing that the claimant appeared to function at a higher level than her IQ score indicated, the court found substantial support for the ALJ's decision to reject these test results.

As noted in *Hancock*, the propriety of an ALJ's decision to discredit an IQ score hinges on the specific facts presented by the record. *Id.* at 475. Here, the facts provide substantial support for the ALJ's determination that Plaintiff's IQ scores were not an accurate reflection of her intellectual ability. Plaintiff graduated from high school with a cumulative 2.4 GPA. (ECF 9-8 at 257.) While she received speech therapy for a period of time, she was not in special education classes. The ALJ noted that she was "proficient on state mandated comprehension tests," scoring in the 43rd percentile in reading, the 68th percentile in language, and the 61st percentile in mathematics. (ECF 9-2 at 22, 24.) After high school Plaintiff received training and worked for eight to nine years as a certified nursing assistant. She is the primary caretaker for her two children and has a driver's license.

Though the IQ test examiner attested to the validity of Plaintiff's results, other medical opinion evidence in the record also provides substantial support for the conclusion that the IQ scores were invalid. State agency psychologist Dr. James W. Bartee performed a case analysis on September 18, 2007. He opined: "I suspect that the IQ scores reflect some sort of validity problem that went unnoticed by the Psych Examiner as they are very inconsistent with the

9

functional capacities noted in the [medical evidence of record]." (ECF 9-9 at 333.) Dr. Bartee added that the physical consultative examiner did not note any obvious intellectual deficits. He found this unusual given Plaintiff's low IQ scores.

Plaintiff's other mental health treatment records support Dr. Bartee's conclusions. On February 27, 2008, Plaintiff presented for mental health treatment with psychiatrist Cindy Dugan, M.D. of Westbrook Health Services. Dr. Dugan noted that Plaintiff's IQ and fund of knowledge were average. Plaintiff's memory, concentration, and attention were also reported as average and her judgment as good. (ECF 9-10 at 362.) Dr. Dugan reported similar findings at subsequent appointments on April 23, June 17, August 19, October 30, and December 11, 2008. (*Id.* at 363-69.) Plaintiff continued routine treatment at Westbrook Health Services through 2009 and early 2010. During an assessment of Plaintiff's ability to do work-related activities, Dr. Lily Jacob described Plaintiff's intellectual ability as less than average but opined that Plaintiff could satisfactorily understand, remember, and carry out detailed, but not complex job instructions. (ECF 9-10 at 396). There is no other indication of any cognitive deficiency in her treatment records.

After review of the record, the Court finds substantial support for the ALJ's conclusion that Plaintiff's IQ scores are inconsistent with evidence of her actual functioning. Without evidence of a valid IQ score within the applicable range, Plaintiff has not demonstrated an impairment that meets or equals the section 12.05(C) mental retardation listing. For these reasons, and with the exception of the analytical error noted above, the Court finds no fault in the Magistrate Judge's recommendation.

## V. CONCLUSION

The ALJ's determination that Plaintiff does not have an impairment that meets or exceeds the requirements of listing 12.05(C) was supported by substantial evidence and was reached by application of correct legal standards. While the Magistrate Judge erred in relying in part on Plaintiff's RFC in his analysis of the ALJ's decision, his ultimate conclusion was nonetheless correct. The Court therefore **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's objection, **ADOPTS** the PF&R to the extent it is consistent with this Memorandum Opinion and Order [ECF 13], **AFFIRMS** the final decision of the Commissioner, **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 25, 2013

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE